UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIMELINE, INC.,

           Plaintiff,

   v.

PROCLARITY CORPORATION, et al.,

           Defendants.

No. C05-1013JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' request for construction of several additional disputed claim terms in this patent infringement action.[1] This is the second round of claim construction in this case. The court previously construed ten disputed terms in an order dated June 29, 2006.

The court has reviewed the parties' briefing and supporting materials and has held a Markman hearing for this second round of claim construction. This order memorializes the court's construction of three disputed terms: (1) automatically; (2) accessing; and (3) providing a driver. Although the parties' briefing also addressed four "means-plus-function" claims, the court directed the parties at the

---

[1] The court recognizes that Plaintiff has not requested construction of two of the disputed terms.

ORDER - 1

Markman hearing to submit supplemental briefing regarding those claims. The court will therefore address the means-plus-function claims in a separate order.

## II.  BACKGROUND

In its original complaint filed on June 3, 2005, Plaintiff Timeline, Inc. alleged infringement of five of its patents by Defendant ProClarity Corporation. On September 28, 2006, the court granted an unopposed motion by Timeline to amend its complaint to add claims against Microsoft Corporation. The Timeline patents at issue in this case are patent numbers 5,802,511 (the "'511 patent"), 6,023,694 (the "'694 patent"), 6,026,392 (the "'392 patent"), 6,625,617 (the "'617 patent"), and 6,631,382 (the "'382 patent").

The patents describe an invention that is designed to facilitate the retrieval and coordination of information that is stored in various types of databases or other data sources. The '511 patent describes the invention as "a computer-implemented system which is able to retrieve information stored in one or more of a number of different sources and which may be in any of a number of different formats and/or provide reports and analysis based on the information." '511 patent, Col. 1:11-15. The '511 patent also describes the invention as "a system which achieves access to stored information, e.g., for accessing information or for achieving coordination and/or combination of information in two different information storage systems." Id. Col. 2:66 - 3:2.

Timeline and ProClarity submitted a Joint Claim Chart to the court in February 2006 regarding 29 disputed claim terms. On June 29, 2006, the court issued a claim construction order that addressed ten of those disputed claim terms.

## III.  ANALYSIS

The court set forth the legal standards for claim construction in its order dated June 29, 2006 and will not repeat that discussion here. See Dkt. No. 173 at 2-5. This order addresses the terms: (1) automatically; (2) accessing; and (3) providing a driver.

ORDER - 2

As a preliminary matter, Timeline argues that the court should decline to construe the terms "accessing" and "providing a driver" because they were not among the terms included in the Joint Claim Chart submitted by Timeline and ProClarity in February 2006. The court understands Timeline's reasons for opposing the addition of these two terms to the claim construction process. However, the parties dispute the meanings of these two terms and Defendants maintain that construing these terms will assist in the resolution of this matter. The court will therefore consider the parties' arguments regarding the construction of these two terms.

**A.    Automatically**

The term "automatically" appears in all claims. Timeline argues that "automatically" should be construed to mean "without the need for human analysis," a term that appears in a number of the same claims as "automatically." In its prior claim construction order, the court construed the term "without the need for human analysis" to mean "not requiring evaluation or choice by a human."[2] (Dkt. No. 173 at 21).

Timeline argues that the patents expressly define "automatically" to mean "without the need for human analysis." To support this argument, Timeline points to the following sentence from the '511 patent specification:

> Preferably, some or all of the analysis involved is performed **automatically (i.e., without the need for human analysis)**, in one embodiment, using a properly programmed computer.

'511 patent, Col. 3:3-5 (emphasis added).

Timeline's argument that "automatically" and "without the need for human analysis" have identical meanings is not consistent with the Joint Claim Chart filed in February 2006, in which Timeline proposed somewhat different constructions of the two terms. As Timeline notes, a patentee may serve as his or her own lexicographer in defining claim terms. However, "[w]hen a patentee acts

---

[2] The court also noted that "[s]imply because human evaluation or choice is not required would not mean that human evaluation or choice is never allowed." Id.

ORDER - 3

as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description." Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1370 (Fed. Cir. 2005). "[T]he statement in the specification must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term." Id. Given that Timeline itself previously proposed somewhat different constructions of "automatically" and "without the need for human analysis" in the Joint Claim Chart, it would be difficult to conclude that the written description reflects a clear intent by the patentee to define "automatically" to mean "without the need for human analysis."

The Federal Circuit has also indicated that "[t]he use of [two] terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each." Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1373 (Fed. Cir. 2004); see also Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 848 (Fed. Cir. 2006) (holding that "the terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous."). Here, the terms "automatically" and "without the need for human analysis" are sometimes used in close proximity in the same claims. For example, Claim 1 of the '511 patent reads, in part:

> [U]sing said first driver to **automatically** obtain first information about the data structure of said first data source **without the need for human analysis** of the first data source by **automatically** accessing content of information . . .

(emphasis added). There is no apparent reason why the patentee would use "automatically" and "without the need for human analysis" in such close proximity in the same claim if the patentee intended the two terms to have identical meanings.

Defendants' proposed construction of "automatically" is "without user input or analysis." The court finds this construction to be more consistent with the ordinary meaning of the term and the intrinsic evidence. As Defendants note, the claims use the term "automatically" in the context of automatically obtaining information and automatically accessing content of information. Construing

ORDER - 4

"automatically" to mean "without user input or analysis" is sensible in these contexts. Defendants also point to language in the '511 patent specification that contrasts actions that may be performed "automatically" to those that include user "input." See '511 patent, Col. 12:10-16 and Col. 12:27-32.

Therefore, the court adopts Defendants' proposed construction and finds that the term "automatically" means "without user input or analysis."

**B.     Accessing**

The term "accessing" was not one of the 29 terms listed in the Joint Claim Chart submitted by Timeline and ProClarity in February 2006.[3] The term "accessing" is used in various contexts in the claims, such as "accessing" data, content of information, and a data source. See, e.g., '511 patent, claim 1; '617 patent, claim 4. As discussed above, Timeline argues that the court should decline to construe the term "accessing." In the alternative, Timeline proposes that the term should be construed to mean: "Obtain access to. Accessing may include actions such as reading, obtaining, viewing, and/or saving." Defendants propose that the term should simply be construed to mean "reading."

Timeline does not dispute that the term "accessing" may include "reading." However, Timeline maintains that "accessing" is "a term of art that has a broader meaning than simply 'read'" and that Defendants' proposed construction is too narrow. (Dkt. No. 226 at 19).

Timeline argues that Defendants themselves have suggested a broader meaning of "accessing" in other sections of their claim construction briefing. In particular, Timeline points to Defendants' discussion of a "programming means for accessing" at least two different data sources, where Defendants argue that the steps for "accessing" a data source include selecting directories, searching directories, loading general information, and loading data. (Dkt. No. 218 at 19). Timeline notes that

---

[3] However, the term "accessing" already arose in the first round of claim construction, when the court construed the term "obtain . . . information about the data structure . . . [by] <u>accessing</u> content of information." In its proposed construction of that term, ProClarity simply repeated the word "accessing," without seeking to define it further.

ORDER - 5

"[n]owhere do defendants explain how 'reading' can be reconciled with the position that 'accessing' requires the functions select directories, search directories, load general information, or load data definitions." (Dkt. No. 226 at 21).

Timeline also observes that the specification of the '511 patent uses the word "obtain" as a synonym for "access," noting that the specification states that "[p]referably, the system is flexible in that it is not inherently limited in the data formats it can <u>access</u>, but can be configured to <u>obtain</u> data from virtually any computer-readable information source." '511 patent, Col 3:6-9 (emphasis added). While Defendants focus on the words "computer-readable" in this sentence to suggest that "access" must mean "read," Timeline is correct that this sentence uses "obtain" rather than "read" as a synonym for "access."

Defendants have also offered several contemporaneous definitions of the term "access" from computer dictionaries. As Timeline notes, these dictionary definitions reflect a broader meaning of "accessing" than simply "reading." While Defendants have offered a declaration from an expert who opines that "accessing" as used in the patents is limited to "reading," the court does not regard this extrinsic evidence as compelling.

In sum, the court agrees with Timeline that the term "accessing" as used in the claims has a broader meaning that simply "reading" and that Defendants' proposed construction is too narrow. However, Timeline's proposed construction is also not ideal. Timeline has proposed construing the term to mean "Obtain access to. Accessing may include actions such as reading, obtaining, viewing, and/or saving." Timeline offers little if any explanation as to why "accessing" would include actions such as "viewing" or "saving."

Therefore, the court will adopt a modified version of Timeline's proposed construction. The court construes the term "accessing" to mean "obtaining access to." The court regards this construction as broad enough to include reading, without limiting the term to that particular action.

**C.     Providing a Driver**

The term "providing a driver" or "providing a first driver" appears in a number of claims. Timeline argues that if the court construes this term, it should be construed as "to supply or make available a driver." Defendants argue that the term should be construed as "identifying and initializing a driver."

The word "providing" is not a term of art and its ordinary meaning is not difficult to determine. Defendants themselves refer to the following definition of the term from a standard dictionary:

> **provide**: "1. archaic: to prepare or get ready in advance 2 a: to supply or make available (something wanted or needed) . . . . b: to make something available to . . . . 3: to have as a condition." Webster's Ninth New Collegiate Dictionary, 1987.

Timeline's proposed definition matches one of the definitions in the dictionary cited by Defendants.

In support of their proposed construction, Defendants note that the '511 patent specification states:

> In the procedure depicted in FIG. 10, the first step after the procedure starts 1002 is to identify and initialize the dynamic drivers 1004.

'511 patent, col. 11:39-41. The "1004" in this sentence refers to block number 1004 in Figure 10. Defendants then point to claim 1 of the '511 patent, which discloses a method comprising of "a first step for providing a first driver. . . . " (as well as "a second step for using said first driver. . . ."). Defendants suggest that the "first step for providing a first driver" in claim 1 relates to the "first step after the procedure starts" in block number 1004, which involves "identify[ing] and initializ[ing] the dynamic drivers."

In response, Timeline argues that Defendants' own briefing suggests that block number 1004 (i.e., identifying and initializing the dynamic drivers) relates to "using" a driver, rather than "providing" a driver. Timeline notes that in Defendants' briefing on one of the means-plus-function claims, Defendants assert that block number 1004 is part of the structure that performs the function of "using" a driver. See Dkt. No. 218 at 14-16. Specifically, Defendants state that block 1004 involves

ORDER - 7

"activating drivers" and that block 1004 is one of "four steps relating to the function 'using said driver . . .'" Id. at 15.

The terms "providing" a driver and "using" a driver both appear in a number of the same claims. As Timeline notes, Defendants contend in one section of their brief that "providing a driver" means "identifying and initializing" a driver as shown in block number 1004, but argue later in their brief that block number 1004 relates to "using" a driver. As Timeline suggests, Defendants' arguments appear to be inconsistent.

Therefore, the court adopts Timeline's proposed construction of "providing a driver," which is consistent with its ordinary meaning. The term "providing a driver" means "supplying or making available a driver."

## IV. CONCLUSION

Following today's ruling, the court must still address four disputed "means-plus-function" claims in order to complete the claim construction process. The parties submitted supplemental briefing on the means-plus-function claims on January 22, 2007. The court will address those claims in a separate order and will advise the parties if it wishes to conduct another hearing on the means-plus-function claims.

The clerk is directed to send copies of this order to all counsel of record.

Dated this 31st day of January, 2007.

                                                          s/James L. Robart
                                                          JAMES L. ROBART
                                                          United States District Judge

ORDER - 8