1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIMELINE, INC.,

               Plaintiff,

    v.

PROCLARITY CORPORATION, et al.,

               Defendants.

No. C05-1013JLR

ORDER ON MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT AND
FOR DISMISSAL OF STATE-LAW
CLAIMS

14

## I.  INTRODUCTION

15

     This matter comes before the court on Defendant Microsoft Corporation's motion for

16

summary judgment and for dismissal of state-law claims.  (Dkt. # 231).  Having considered the papers

17

filed in connection with the motion and finding this matter appropriate for disposition without oral

18

argument, the court GRANTS Microsoft's motion.[1]  The court finds that Plaintiff Timeline, Inc.'s

19

purported termination of its 1999 Patent License Agreement with Microsoft is not effective and that

20

the 1999 agreement remains in force.  Because Microsoft holds a license under the 1999 agreement to

21

the patents at issue in this case, Plaintiff's claims against Microsoft for patent infringement are

22

DISMISSED with prejudice.

23

24

25

    [1]  Although Defendant Microsoft Corporation requested oral argument in the manner
prescribed by Local Civil Rule 7(b)(4), Plaintiff Timeline did not do so.

ORDER - 1

1    Pursuant to 28 U.S.C. § 1367(c), the court also declines to exercise supplemental jurisdiction

2    over the remaining state-law claims and counterclaims between Timeline and Microsoft.  The

3    remaining state-law claims and counterclaims in this action are DISMISSED without prejudice.

4    The reasons for the court's order are stated below.

5                                    **II.   BACKGROUND**

6    This is a dispute over software patents and licensing agreements.  Plaintiff Timeline filed this

7    action on June 3, 2005 against Defendant ProClarity Corporation.  Timeline's original complaint

8    raised claims against ProClarity for infringement of five related patents: U.S. Patent Numbers

9    5,802,511 (the "'511 patent"), 6,023,694 (the "'694 patent"), 6,026,392 (the "'392 patent"),

10   6,625,617 (the "'617 patent"), and 6,631,382 (the "'382 patent").

11   On September 28, 2006, the court granted an unopposed motion by Timeline to file a second

12   amended complaint (SAC) that added claims for patent infringement and breach of contract against

13   Microsoft Corporation.  In response, Microsoft brought a number of counterclaims against Timeline,

14   including a request for a declaratory judgment that Timeline's purported termination of a 1999 Patent

15   License Agreement between the parties was ineffective.

16   The dispute between Microsoft and Timeline stems from a long history, which the court

17   summarizes briefly below.  For the purposes of the pending summary judgment motion, Microsoft has

18   not challenged most of the factual allegations in Plaintiff's second amended complaint.

19   A.    1995 SBFM Agreement

20   In its second amended complaint, Timeline alleges that it invented database software in the fall

21   of 1994 that, among other things, could automatically extract information about the data structure of

22   an existing database and use that information to design and create a new database.  In June 1995,

23   before the patents-in-suit had issued, Microsoft and Timeline entered into a Software Development

24   and License Agreement.  Under the 1995 agreement, Microsoft licensed source code developed by

25

1    Timeline, which Microsoft incorporated in a product called Small Business Financial Manager

2    (SBFM).  The 1995 agreement is referred to by Microsoft as the "SBFM Agreement."

3         The SBFM Agreement included a non-competition clause that restricted Timeline's ability to

4    market a product similar to SBFM.  The agreement also required Microsoft to deliver updated source

5    code and user information for SBFM if Microsoft ceased marketing the product.  In the SAC,

6    Timeline alleges that Microsoft breached its obligations under the 1995 agreement by failing to

7    provide Timeline with the last version of the source code and a list of end users for the SBFM.

8    B.   1999 License Agreement

9         In September 1998, Timeline obtained the '511 patent, which is described as a "data retrieval

10   method and apparatus with multiple source capability."  After the patent issued, Microsoft and

11   Timeline disputed whether Microsoft's forthcoming SQL Server 7.0 application release would infringe

12   one or more claims of the '511 patent.

13        Following extensive negotiations between the parties in which both sides were represented by

14   counsel, Microsoft and Timeline entered into a Patent License Agreement ("License Agreement") on

15   June 1, 1999.  Under this agreement, Microsoft obtained a license to the '511 patent and to "all other

16   patents and patent applications filed as of the Effective Date that are owned, controlled or licensable,

17   in whole or in part, by Timeline relating to the subject matter thereof."  Microsoft maintains that the

18   1999 License Agreement covers all five patents at issue in this case.  Timeline does not dispute this

19   point.

20        Section 2.1 of the License Agreement provides that "Timeline hereby grants to Microsoft . . . a

21   non-exclusive, perpetual, irrevocable, fully paid, worldwide right and license" to the licensed patents.

22   Section 3 of the agreement also provides that "Timeline hereby irrevocably and without fee covenants

23   not to sue and releases, acquits and forever discharges Microsoft, its Subsidiaries and Affiliates from

24

25

1   any and all claims of Infringement of the Licensed Patents . . . occurring before, on or after the

2   Effective Date of this Agreement.[2]  Section 4 of the agreement states:

3          4.1     In consideration of the license granted under Section 2, Microsoft:

4                  (a)     shall pay Timeline, within 48 hours of the execution of this Agreement, a fully
                           paid-up, non-refundable license fee of Five Million Dollars (US $5,000,000);
5
                   (b)     shall enter into a Seventh Amendment with Timeline to [the 1995 SFBM
6                          Agreement], concurrently with the Effective Date hereof; and

7                  (c)     shall afford to Timeline "Partner" status in the Microsoft Solution Providers
                           program (or its successors or equivalents) for a period of 60 calendar months
8                          starting June 1, 1999.  As such, Timeline shall be entitled during such period to
                           all the rights and privileges associated with such status, most particularly
9                          development software and support and marketing support as is then normal and
                           customary for firms of such status under Microsoft's then-standard program (or
10                         its successors or equivalents).

11  It is undisputed that Microsoft: (1) paid Timeline $5,000,000; (2) entered into a Seventh Amendment

12  to the 1995 SBFM Agreement, which eliminated the non-competition provisions imposed under that

13  agreement on Timeline; and (3) enrolled Timeline as a "Partner" in the Microsoft Solution Providers

14  program for sixty months.  However, Timeline asserts in the SAC that Microsoft breached its

15  obligation to provide adequate marketing support under the Solution Providers program.

16  C.     State Court Litigation Regarding 1999 License Agreement

17         Shortly after the 1999 License Agreement was executed, a dispute arose between the parties

18  regarding the protection the agreement provided to Microsoft licensees.  Microsoft argued that the

19  agreement permitted Microsoft licensees "to add code and software to Microsoft products, even if the

20  resulting combination infringes Timeline's patent, as long as the code or software added does not

21  independently infringe Timeline's patent."  Microsoft Corp. v. Timeline, Inc., 2002 WL 339338 at * 4

22  (Wn. App. Mar. 4, 2002).  Timeline maintained that the agreement "prohibited Microsoft customers

23  from combining their own code or software with Microsoft products if the added code performed a

24  _____

25         [2]  The agreement defines "Infringement" as including direct infringement, contribututory
    infringement, and inducement to infringe.

1  step in the patented process and the resulting combination infringed Timeline's patent." <u>Id.</u>  Microsoft

2  filed a declaratory judgment action in state court regarding this dispute.  Although Microsoft prevailed

3  at the trial court level, the Washington Court of Appeals ultimately ruled in favor of Timeline.  <u>Id.</u> at *

4  8.

5  D.       <u>This Litigation and Timeline's Purported Termination of 1999 License Agreement</u>

6          In June 2005, Timeline filed this lawsuit against Defendant ProClarity, alleging infringement of

7  the '511 patent and related patents.  When the suit was filed, ProClarity was an independent software

8  vendor that developed software that worked in conjunction with Microsoft products.  Microsoft was

9  not named as a defendant in the original complaint.

10         In September 2005, ProClarity and Microsoft entered into an agreement in which Microsoft

11 agreed to support and assist ProClarity in the defense of this suit and to pay up to $500,000 of

12 ProClarity's defense costs.  The agreement stated that the two companies "have a strong business

13 interest in eliminating invalid and unenforceable patents that serve as potential alleged roadblocks or

14 tollgates in the way of companies like ProClarity that develop and sell software for use in conjunction

15 with Microsoft products."  In the spring of 2006, Microsoft acquired ProClarity.

16         On August 18, 2006, Timeline sent a letter to Microsoft that purported to terminate the 1999

17 License Agreement.  The letter stated:

18         By this letter, Timeline, Inc. provides notice that it has terminated the Patent License
           Agreement dated June 1, 1999 between Microsoft Corporation and Timeline, Inc.  Timeline
19         terminates because Microsoft has materially breached and repudiated its obligations under the
           Agreement, including but not limited to paragraphs 2.2, 4.1, the acknowledgment that Timeline
20         is the owner of the licensed patents, and the implied covenant of good faith and fair dealing.
           Microsoft has violated the spirit of the Agreement as well as the letter of the Agreement by
21         continually taking steps to deprive Timeline of the benefit of its bargain.

22 The same day, Timeline filed a motion in this court to amend its complaint to add claims for patent

23 infringement and breach of contract against Microsoft, which the court granted as unopposed.  (Dkt. #

24 184).  The amended complaint alleges a number of breaches of the 1995 SBFM Agreement and the

25 1999 License Agreement.

ORDER - 5

1    Microsoft has now moved for summary judgment, stating that it "seeks summary judgment in

2    its favor on Timeline's patent-infringement claims and on the portion of Microsoft counterclaim

3    relating to the continuing validity of the License Agreement and the license."  Microsoft also requests

4    that the court decline supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(c).

5                              **III.   ANALYSIS**

6    On a summary judgment motion, the court must draw all inferences from the admissible

7    evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d

8    1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of

9    material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

10   The moving party bears the initial burden of showing the absence of a genuine issue of material fact.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the

12   opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elec. Indus. Co. v.

13   Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and

14   probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indemn. Co.,

15   952 F.2d 1551, 1558 (9th Cir. 1991).  When confronted with purely legal questions, the court does

16   not defer to the non-moving party.

17   A.    Timeline's Termination of Microsoft's License

18   In the 1999 License Agreement, Timeline granted Microsoft a "perpetual, irrevocable, [and]

19   fully paid" license to the patents at issue in this case.  Timeline also "irrevocably and without fee"

20   covenanted not to sue and "release[d], acquit[ted], and forever discharge[d]" Microsoft from "any and

21   all claims of Infringement of the Licensed Patents."  Pursuant to the agreement, Microsoft paid

22   Timeline a "non-refundable" $5,000,000 license fee.  However, Timeline purported to terminate the

23   1999 License Agreement in August 2006, based on allegations that Microsoft had "materially

24   breached and repudiated its obligations under the Agreement."

25

ORDER - 6

Timeline argues that under common-law contract principles, it was entitled to terminate the 1999 License Agreement in the event of a material breach.  Microsoft argues that because the Licence Agreement granted Microsoft an "irrevocable," "perpetual," "fully paid," and "non-refundable" license to the patents, the plain language of the agreement prevents Timeline from terminating Microsoft's license, even in the event of a material breach of the License Agreement.

The 1999 License Agreement provides that the contract shall be construed in accordance with Washington law.  Neither party has pointed to Washington case law that addresses whether an "irrevocable," "perpetual," or "fully paid"  license may be terminated due to a material breach of a licensing agreement.  As a result, the court must look to general principles of Washington law.

Under Washington contract law, courts generally "give undefined terms their 'plain, ordinary, and popular' meaning," which "may be ascertained by reference to standard English dictionaries." Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 493 (2005).  Unambiguous contract terms are interpreted as a question of law.  Id.   "An ambiguous provision is one fairly susceptible to two different, reasonable interpretations."  Id. at 493-94.  Whether a contract term is ambiguous is a question of law.  Paradise Orchards Gen. P'ship v. Fearing, 122 Wn. App. 507, 517 (2004).

In this case, the court finds that the term "irrevocable" is not ambiguous.[3]   Looking to standard dictionaries, the term "irrevocable" may be defined as "not to be revoked or recalled; unable to be repealed or annulled; unalterable."  Random House Unabridged Dictionary 1010 (2d ed. 1993). The ordinary meaning of the term supports Microsoft's argument that its license to the Timeline patents may not be revoked under any circumstances, even if there is a material breach of the agreement.  By contrast, Timeline's proposed construction would not be consistent with the ordinary meaning of the term because it would effectively alter the term to mean "irrevocable – except in the event of breach."

---

[3]  The terms "perpetual," "fully paid," and "non-refundable" are also unambiguous.

1    Despite the ordinary meaning of the term, Timeline suggests that "irrevocable" is used in the

2    contract to convey that the licenses are not terminable at will and should not be interpreted to restrict

3    Timeline's ability to terminate the licenses due to a material breach.  As Microsoft notes, however, the

4    licenses would not have been terminable at will even if the agreement had excluded the term

5    "irrevocable."  The agreement provided that "[t]he term of the licenses and covenants granted herein

6    shall be from the Effective Date of this Agreement until the expiration of the last to express rights of

7    the Licensed Patents."  Under Washington law, this provision would mean that the licenses were not

8    terminable at will.  See, e.g., Kwik-Lok Corp. v. Pulse, 41 Wn. App. 142, 148 (1985) ("If a reasonable

9    period of duration can be implied from the circumstances, the contract is not terminable at will until

10   the lapse of such reasonable time . . . .") (quoting Cromwell v. Gruber, 7 Wn. App. 363, 366 (1972)).

11   As Microsoft suggests, the use of the word "perpetual" would also be sufficient to express an intent

12   that the licenses were not terminable at will.

13          Under Washington law, a court must strive to give effect to all provisions in a contract and to

14   give meaning to every term.  As the Washington Supreme Court has held:

15          In construing a contract, a court must interpret it according to the intent of the parties as
            manifested by the words used.  Courts can neither disregard contract language which the
16          parties have employed nor revise the contract under a theory of construing it.  An
            interpretation of a writing which gives effect to all of its provisions is favored over one which
17          renders some of the language meaningless or ineffective. This should especially be true when
            the writing is the product of a long period of negotiation with both parties having been
18          represented by competent counsel.

19   Wagner v. Wagner, 95 Wn.2d 94, 101 (1980) (internal citations omitted); see also Bogomolov v. Lake

20   Villas Condo. Ass'n of Apt. Owners, 131 Wn. App. 353, 361 (2006) ("When interpreting a document,

21   the preferred interpretation gives meaning to all provisions and does not render some superfluous or

22   meaningless."); Diamond B Constructors, Inc. v. Granite Falls Sch. Dist., 117 Wn. App. 157, 165

23   (2003) ("We must construe a contract to give meaning to every term.").  In this case, there is no

24   dispute that the 1999 License Agreement was the product of lengthy negotiations in which both sides

25   were represented by competent counsel.  Under these circumstances, the court must conclude that the

ORDER - 8

1   parties did not intend the word "irrevocable" to be used in a manner that would render the term

2   meaningless or superfluous.

3          Timeline also points to Section 237 of the Restatement (Second) of Contracts for the general

4   proposition that a contracting party's material breach of an agreement discharges the other party's

5   obligations and permits the other party to terminate.  See also Jacks v. Blazer, 39 Wn.2d 277, 285

6   (1951) ("a breach or non-performance of a promise by one party to a bilateral contract, so material as

7   to justify a refusal of the other party to perform a contractual duty, discharges that duty.").  However,

8   the Restatement also notes that this rule is "subject to variation by agreement of the parties."  2

9   Restatement (Second) of Contracts § 237 cmt. a.  In this case, the parties' unqualified use of the term

10  "irrevocable" must be read to preclude Timeline from terminating Microsoft's license under any

11  circumstances, even in the event of a material breach.

12         To support its interpretation of the agreement, Timeline notes that one commentator has

13  opined that "[w]e understand these terms [irrevocable or perpetual] to mean that, insofar as the parties

14  can create this situation by contract without offending overriding public policy norms, the license

15  cannot be terminated by the licensor or otherwise ended except for breach by the licensee."  Raymond

16  T. Nimmer & Jeff Dodd, Modern Licensing Law § 9.16 (2006).  However, this understanding is not

17  uniformly held among commentators.  For example, another commentator notes that "[o]ften a license

18  is of such critical value to an enterprise or an undertaking that the prospective licensee may seek to

19  make the license irrevocable despite nonpayment or other material breach."  Id.  The commentator

20  observes that "there are a variety of ways of achieving irrevocability" and that "[t]he simplest is to

21  simply provide that: **The license conferred under this Agreement shall be perpetual and**

22

23

24

25

ORDER - 9

1    **irrevocable**."[4]  3 Roger M. Milgram, <u>Milgram on Licensing</u> § 27.03 (2007) (emphasis in original).

2    That is essentially what Microsoft and Timeline did in this case.

3           Timeline also points to two federal court decisions to support its contention that an

4    "irrevocable" and "perpetual" patent license may be terminated due to a material breach by the

5    licensee:  <u>Dow Chemical Co. v. United States</u>, 226 F.3d 1334 (Fed. Cir. 2000), and <u>Nano-Proprietary,</u>

6    <u>Inc. v. Canon, Inc.</u>, 2007 WL 628792 (W.D. Tex. Feb. 22, 2007).  However, neither case was decided

7    under Washington law, nor did either case discuss the meaning of these phrases.  In addition, as

8    Microsoft notes, neither case describes the remaining substantive content of the license agreements in

9    detail, nor do these cases describe exhaustively what other testimony or evidence may have been given

10   in those particular cases to have caused the parties not to raise or the courts not to address issues

11   similar to the issue before this court.  As a result, these cases do not have precedential value in

12   interpreting Washington law and have limited persuasive value in interpreting the agreement before

13   this court.[5]

14          Timeline's earlier conduct in this litigation also tends to support Microsoft's interpretation of

15   the agreement.  Before Microsoft was added as a defendant in this action, Timeline filed a motion to

16   compel production of certain communications between Microsoft and ProClarity.  In connection with

17   that motion, Timeline suggested that the License Agreement insulated Microsoft from potential

18   liability for patent infringement, stating that "Timeline granted Microsoft a covenant not to sue.  Thus,

19

20          [4]  In addition to the "simplest" method set forth above, this commentator notes that "there

21   other ways to achieve irreovacability," such as "provid[ing] that in the event of any breach by the

22   licensee, the licensor would be limited to remedies at law and would have no right to terminate or
     rescind the contract."  <u>Id.</u>  However, this commentator does not suggest that a limitation of remedies
     provision is required to achieve irrevocability of a license in the event of a breach.

23
            [5]  As Timeline notes, the <u>Dow Chemical</u> case also involved situation in which the licensee

24   completely repudiated a license agreement by failing to make any payments under the agreement.  By
     contrast, there is no dispute that Timeline received a "non-refundable" $5,000,000 payment under the

25   1999 License Agreement.

ORDER - 10

1   Microsoft is not liable even if it induces its customers to infringe . . . ."  (Dkt. # 90 at 2).  At best, it

2   would have been misleading for Timeline to offer this unqualified assurance if it believed that the 1999

3   License Agreement could potentially be terminated for material breach.  At the time Timeline made

4   this representation, a number of the alleged breaches had already occurred, such as Microsoft's alleged

5   failure to provide marketing support to Timeline under the Solution Provider program between 1999

6   and 2004.

7         Finally, Timeline points to the declaration of Emmett Murtha, who is identified by Timeline as

8   its licensing expert.  Mr. Murtha worked for IBM Corporation for 35 years, including 12 years as

9   IBM's Director of Licensing.  After leaving IBM in 1997, he founded a consulting firm in which he

10  assists clients in developing and licensing intellectual assets.  Mr. Murtha testifies that he has

11  participated in negotiating and drafting hundreds of patent licenses.  He asserts that "irrevocable" and

12  "perpetual" are terms of art in the field of patent licensing that are commonly understood to convey

13  that a license is not terminable at will, rather than to restrict the licensor's right to cancel the license in

14  the event of breach.  Mr. Murtha states:

> 11.   In the field of patent licensing, certain terms constitute "terms of art."  That is, they
> have a meaning and purpose that is commonly understood to persons who practice in
> the area of negotiating and drafting patent licenses.  The terms "irrevocable" and
> "perpetual" are such terms of art.
>
> 12.   It was always our concern at IBM that license agreements, even if they specified a
> duration of the license rights, might be deemed terminable at will by either party.  In the
> Information Technology industry, in which the litigants here operate, several terms
> have been commonly employed in license agreements to preclude that result, and to
> indicate the intention of the parties that a patent license was not terminable at will.  In
> many cases, drafters of patent licenses would provide that the licenses were
> "irrevocable" and/or "perpetual."  The chief purpose of these words was to make clear
> that the license grant was not for a fixed term and was not terminable at will.  Even if
> the license was for a fixed and definite term, calling the license "irrevocable" and/or
> "perpetual" was a method of providing further assurance that the licensor could not
> unilaterally terminate the license at will or make a claim that it was entitled to do so.
>
> 13.   However, as was commonly understood within the field of patent licensing, these
> words are not intended to, and do not, restrict the grantor's right to cancel the license
> in the event of breach by the licensee.  In other words, the commonly understood usage

of these terms of art is that although they convey that the contracts are not terminable
at will, they do not negate the right of the grantor to cancel the contract for cause.

14.   Parties to a particular license agreement might mutually intend that even a material
breach by the licensee would not entitle the grantor to terminate the license, but in such
cases, specific language to that effect would need to be added.  As commonly
understood in the field of patent licensing, mere use of the words "irrevocable" and/or
"perpetual" in referring to the duration of the license would not be sufficient to express
that intention or accomplish that result. I note that the Patent License Agreement
between Timeline and Microsoft contains no language expressly precluding cancellation
of the patent license as a grantor remedy for breach of contract by the licensee
(Microsoft).

15.   Therefore, it is my opinion that an "irrevocable" and "perpetual" license grant may be
cancelled or rescinded by the licensor (here Timeline) in the event of a material breach
of the contract granting the license by the licensee (here Microsoft).  Based on my
experience, this would be the expected understanding of patent licensors and drafters of
patent licenses in the Information Technology industry during at least the past twenty
years in the event of such a breach.  At IBM, we were extremely sensitive to such risks
and took great efforts to guard against such breaches despite the fact that many of the
licenses granted to us were expressly "irrevocable."

Murtha Decl. ¶¶ 11-15.

As Timeline notes, Washington law permits extrinsic evidence of trade usage to be admitted to

assist the court in interpreting a contract, even when a contract's terms are unambiguous.  See

Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 311 (2005).

However, the court finds that Mr. Murtha's declaration is not sufficient to create a genuine issue of

material fact to preclude summary judgment.

It is true that expert opinion "may defeat summary judgment if it appears the affiant is

competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even

though the underlying factual details and reasoning upon which the opinion is based are not." Walton

v. U.S. Marshals Service, 476 F.3d 723, 730 (9th Cir. 2007).  However, an expert's "conclusory

report" is not sufficient to raise a genuine issue of material fact.  Id.  "In the context of a motion for

summary judgment, an expert must back up his opinion with specific facts."  United States v. Various

Slot Machines on Guam, 658 F.2d 697, 700 (9th Cir. 1981); see also Miller v. Likins, 109 Wn. App.

ORDER - 12

1  140, 148 (2001) ("It is well established that conclusory or speculative expert opinions lacking an

2  adequate foundation will not be admitted").

3        In his declaration, Mr. Murtha states that he has been involved in negotiating and drafting

4  "hundreds" of patent licensing agreements.  However, his declaration does not reveal his experience in

5  drafting or negotiating agreements where the specific terms "irrevocable" and "perpetual" were used,

6  nor does he indicate that he has been involved in disputes in which the meaning of those specific terms

7  was at issue.  At his deposition, he identified only three instances (apparently in the 1970s or early

8  1980s) at IBM in which he was involved in negotiating or drafting a licensing agreement that included

9  the term "irrevocable."[6]  However, he could not recall any discussion with the licensor regarding the

10  use or meaning of that term, nor could he identify any disputes that arose regarding the term.  Mr.

11  Murtha also did not identify any instances in the past 20 years in which he was involved in negotiating

12  a patent license that used the terms "irrevocable" or "perpetual," notwithstanding his statement in his

13  declaration that the words "irrevocable" and "perpetual" have been terms of art in the patent licensing

14  field for at least the last 20 years.  He also testified at his deposition that he has not written or spoken

15  on the meaning of the terms "irrevocable" or "perpetual" in licensing agreements, nor does his

16  declaration identify any surveys or research he has conducted regarding the meaning or usage of these

17  terms.

18        In short, while Mr. Murtha has experience in negotiating and drafting patent licensing

19  agreements, his declaration provides an insufficient factual basis for his opinion regarding the meaning

20  of the specific terms "irrevocable" and "perpetual" in such agreements.  In addition, his deposition

21  reveals little experience in using those terms in licensing agreements, particularly in the past twenty

22  years.  Under these circumstances, the court cannot find that the conclusory assertions in Mr.

23  _____

24        [6]  It should also be noted that "[t]he practice of one company . . . is generally insufficient to
establish a trade usage."  British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d 78, 84 (2d
25  Cir. 2003); H&W Indus., Inc. v. Occidental Chem. Corp., 911 F.2d 1118, 1122 (5th Cir. 1990).

1    Murtha's declaration regarding trade usage of these terms are sufficient to defeat a motion for

2    summary judgment.[7]

3           In sum, the court finds that the 1999 License Agreement does not permit Timeline to terminate

4    Microsoft's "perpetual, irrevocable, [and] fully paid" license to the patents at issue in this case, even in

5    the event of material breach.  In light of this holding, it is not necessary to reach Microsoft's additional

6    arguments that the alleged breaches were not material or that Timeline's purported termination of the

7    agreement was untimely.

8           Therefore, the court grants Microsoft's motion for summary judgment on the portion of its

9    counterclaim that requests a declaratory judgment that Timeline's purported termination of the 1999

10   License Agreement was ineffective.  Because Timeline's termination was not effective, the court

11   dismisses Timeline's claims against Microsoft for patent infringement as barred under the 1999

12   License Agreement.  Timeline's remedy for any alleged breaches would be to seek damages for breach

13   of contract.

14   B.    Alleged Breach of the 1995 SBFM Agreement

15          In the second amended complaint, Timeline alleges that Microsoft breached provisions of the

16   1995 SBFM Agreement.  In turn, Timeline argues that a breach of the 1995 SBFM Agreement

17   constitutes a breach of the 1999 License Agreement, which would justify Timeline's termination of the

18   1999 agreement.  Timeline alleges that the 1995 Agreement "was incorporated by amendment as a

---

20          [7] As Microsoft notes, Mr. Murtha's opinion is also difficult to square with his deposition
21   testimony, where he was asked if Timeline would have had the right to revoke the patent license in the
     event of material breach if the agreement had included the following language: "Microsoft shall have
     the perpetual right to this License.  Microsoft has fully paid for this license.  **Timeline may not**
22   **revoke this license under any circumstances.**" (Emphasis in original).  Mr. Murtha testified that a
     licensor "would not be in a position to make such a revocation" in that situation.  As Microsoft
23   observes, this hypothetical language is essentially indistinguishable in meaning from the 1999
     agreement's description of the license as "perpetual," "irrevocable," and "fully paid."  Courts have
24   noted that "an expert's conclusory allegations do not defeat summary judgment where the record
     clearly rebuts the inference the expert suggests."  Digital Control Inc. v. McLaughlin Mfg. Co., 242 F.
25   Supp. 2d 1000, 1007 (W.D. Wash. 2002).

ORDER - 14

1    part of the 1999 Agreement," (SAC ¶ 37), and that the two agreements "legally constitute a single

2    contract." (Opp. at 8 n.7).

3         As discussed above, the court finds that even if Microsoft committed a material breach of the

4    1999 License Agreement, Timeline was not able to terminate the irrevocable and perpetual licenses

5    granted to Microsoft in the agreement.  As a result, it is not necessary for the court to reach the

6    question of whether a material breach of the 1995 SBFM Agreement could constitute grounds for

7    Timeline to terminate the license granted in the 1999 License Agreement.  Even assuming that a

8    material breach of the 1995 agreement could be regarded as a breach of the 1999 License Agreement,

9    such a breach would not provide Timeline with a basis to terminate the irrevocable and perpetual

10   licenses granted to Microsoft in the 1999 License Agreement.

11   C.    Supplemental Jurisdiction Over State-Law Claims

12        Finally, Microsoft has moved to dismiss the state-law contract claims between Timeline and

13   Microsoft.  Microsoft makes this request pursuant to 28 U.S.C. § 1367(c), which provides that a

14   district court may decline to exercise supplemental jurisdiction over a state-law claim if:

15       (1)    the claim raises a novel or complex issue of State law,

16       (2)    the claim substantially predominates over the claim or claims over which the district
     court has original jurisdiction,

17

18       (3)    the district court has dismissed all claims over which it has original jurisdiction, or

19       (4)    in exceptional circumstances, there are other compelling reasons for declining
     jurisdiction.

20   Although Microsoft does not identify which specific provisions of Section 1367(c) it invokes in this

21   case, there would be at least two potential bases under Section 1367(c) for the court to decline

22   supplemental jurisdiction over the state-law contract claims between Timeline and Microsoft.

23        First, Section 1367(c)(3) permits a district court to decline supplemental jurisdiction when it

24   has dismissed all claims over which it has original jurisdiction.  Although there are remaining federal

25   claims in this action against ProClarity, there are no remaining federal claims against Microsoft.  In

ORDER - 15

1  some cases, courts have declined to exercise supplemental jurisdiction under Section 1367(c)(3) over

2  state-law claims against a defendant after all federal claims against that defendant have been dismissed,

3  even though federal claims remained against other defendants.  See, e.g., Ryan v. Illinois Dep't of

4  Children & Family Servs., 185 F.3d 751, 764-65 (7th Cir. 1999); Spearman v. Tom Wood Pontiac-

5  GMC, Inc., 2001 WL 1712506 at * 7 (S.D. Ind. Dec. 3, 2001).

6          In addition, the "catchall" provision of Section 1367(c)(4) provides that a court may decline to

7  exercise supplemental jurisdiction "in exceptional circumstances" where "there are other compelling

8  reasons for declining jurisdiction."  Having presided over this litigation for nearly two years, the court

9  has little difficulty concluding that this case presents exceptional circumstances and there are

10  compelling reasons for declining supplemental jurisdiction over the state-law claims under Section

11  1367(c)(4).

12          This case was filed in June 2005 and has been complex and unusually contentious from the

13  outset.  The state-law claims between Timeline and Microsoft were raised more than a year into this

14  litigation, following Timeline's purported termination of the 1999 License Agreement in August 2006

15  and its assertion of patent infringement and breach of contract claims against Microsoft.  For the

16  reasons discussed above, Timeline should not have brought patent infringement claims against

17  Microsoft in the first place, given the terms of the 1999 License Agreement.  Because Timeline and

18  Microsoft are both Washington corporations, the state-law breach of contract claims between the two

19  companies are only in this court by virtue of Timeline's improper assertion of federal patent

20  infringement claims against Microsoft.  The contract claims between Timeline and Microsoft – which

21  are based in part on alleged conduct that Timeline has apparently been aware of for years – should

22  have been brought in state court and only serve to add another layer of complexity and

23  contentiousness to this action.

24          Under Section 1367(c)(4), the court must consider whether declining supplemental jurisdiction

25  would best accommodate values of economy, convenience, fairness, and comity.  Executive Software

ORDER - 16

1  North America, Inc. v. U.S. Dist. Court for Cent. Dist. Cal., 24 F.3d 1545, 1557 (9th Cir. 1994).

2  Here, the court finds that these values weigh strongly in favor of declining supplemental jurisdiction.

3  Comity interests would be served by permitting Washington state courts to resolve state-law contract

4  disputes between two Washington corporations.  In terms of judicial economy, this court has not yet

5  expended significant resources on the state-law contract claims and the court sees little basis to

6  conclude that there would be a significant overlap between the state-law breach of contract claims

7  against Microsoft and the federal patent infringement claims against ProClarity.  Convenience and

8  fairness to the parties would also weigh in favor of declining supplemental jurisdiction.  It would not

9  be inconvenient or unfair to require Timeline and Microsoft to litigate their contract disputes in King

10  County Superior Court, as they previously did in 1999 when a dispute arose under the License

11  Agreement.  Although the parties have expended resources in this court conducting discovery

12  regarding the state-law claims, there is no apparent reason why such discovery could not be reused if

13  Timeline chooses to refile its breach of contract claims against Microsoft in state court.

14      Therefore, the court concludes that it should decline supplemental jurisdiction over the

15  remaining state-law claims between Timeline and Microsoft.  These claims shall be dismissed without

16  prejudice to refiling in state court.

17                              **IV.  CONCLUSION**

18      For the reasons stated above, court grants Microsoft's motion for summary judgment and for

19  dismissal of state-law claims.  The court finds that Timeline's purported termination of its 1999 Patent

20  License Agreement with Microsoft is not effective and that the 1999 agreement remains in force.

21  Because Microsoft holds a license to the patents at issue under the 1999 agreement, Plaintiff's claims

22  against Microsoft for patent infringement are dismissed with prejudice.  Pursuant to 28 U.S.C. §

23  1367(c), the court also declines to exercise supplemental jurisdiction over the remaining state-law

24

25

ORDER - 17

1  claims and counterclaims between Timeline and Microsoft.  The remaining state-law claims and

2  counterclaims in this action are dismissed without prejudice.

3       Dated this 29th day of May, 2007

4

5                                             s/James L. Robart
                                              JAMES L. ROBART
6                                             United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 18